UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

        *Plaintiff*,

    *vs.*                                                                                                                      Case No. 24-CR-236

ARLETTA ALLEN,

        *Defendant*.
_____

## MOTION TO SUPPRESS - FACEBOOK

Arletta Allen, by counsel, moves this Court, under the Fourth Amendment to the United States Constitution, for an order suppressing all evidence and derivative evidence obtained from the execution of the search warrant for her Facebook account. The warrant was constitutionally defective: it authorized a sweeping, indiscriminate search of nearly every aspect of Ms. Allen's digital life – while drawing next to no connection between the Facebook account and the suspect offense. The warrant lacked particularity as to both its temporal scope and the scope of the content it sought, reaching back over two years before the alleged offense and authorizing law enforcement agents to sift through deeply personal and unrelated communications, location data, and online activity. In effect, the Facebook warrant was a modern-day "general warrant" – precisely the kind of dragnet search the Fourth Amendment was designed to prevent.

Additionally, the Facebook warrant is defective for the same reasons that the warrants for her business, vehicle, and residence were—the affidavit fails to supply probable cause that the fire was intentionally set and caused by Ms. Allen, and it omitted

material facts that would have extinguished any probable cause, requiring a *Franks* hearing. Allen incorporates all the arguments made in that motion here.

## FACTUAL BACKGROUND

On the same date law enforcement agents sought a warrant to search Arletta Allen's home, vehicle, and business, for evidence related to a suspected arson of her soul food restaurant, A Family Affair, agents also sought a warrant for the contents of Ms. Allen's Facebook account. The factual allegations included in the affidavit supporting the Facebook warrant largely track those contained in the warrant to search Ms. Allen's home, vehicle, and business. *See* Ex. K, Facebook Warrant Affidavit. Therefore, for the sake of brevity and efficiency, Ms. Allen incorporates the factual background from her motion to suppress all evidence obtained as the result of those other search warrants, which Ms. Allen has filed simultaneously with this motion. Ms. Allen does, however, highlight the following additional facts that are relevant to her claim that the Facebook warrant was overbroad.

In detailing the facts of the fire investigation, the warrant affidavit includes only two brief mentions of Facebook. The first is the fact that investigators found a "publicly viewable Facebook profile depicting the likeness of Arletta Allen" and observed that "Allen often posts multiple times daily to her Facebook account." *Id.* ¶ 36. The affidavit does not contain any information, however, about the content of those daily posts or whether they had any relevance to the investigation.

The second Facebook-related allegation is that investigators observed two photos Ms. Allen posted on Facebook on June 10, 2019, in which she is wearing black shoes with

2

the distinct white designs on the side that are consistent with the shoes worn by the unknown person observed on surveillance video during the evening hours of October 10, 2021. *Id.* ¶ 37. Those shoes are the rather ubiquitous Vans sneakers,[1] and those pictures pre-dated the fire by nearly two-and-a-half years. Aside from those two observations, however, that Ms. Allen had a Facebook profile on which she posted frequently, and that her profile included two photographs of her wearing Vans sneakers years before the fire, there were no other specific factual allegations about how or why Facebook related to the investigation or the suspected offense.

Despite the sparse connection to Facebook, the warrant affidavit sought extensive information from Ms. Allen's Facebook account. The affidavit sought twenty separate categories of information, including things far afield from this investigation, such as: all stories posted since June 1, 2019; all photos and videos since June 1, 2019; all records of the account's usage of the "like" feature; all information about Facebook pages the account is a "fan" of; all past and present lists of friends; all Facebook searches since June 1, 2019; use and access to Facebook Marketplace; and records of communications between Facebook and any person regarding the user's Facebook account. Again, no effort was made to link these categories of information, or the other categories of information, with this investigation. Rather, the affidavit relied on boiler-plate statements about the kinds of information that can be found on Facebook without explanation as to why there was

---

[1] RunRepeat, *Vans Shoes Statistics* (Sept. 09, 2023) (noting that Vans manufactured and sold over 105 million pairs of shoes in the 2023 fiscal year), available at: https://runrepeat.com/vans-shoes-statistics.

probable cause that that such information would be found on Ms. Allen's page and why it would constitute evidence of a crime.

## ARGUMENT

The chief evil the Fourth Amendment was meant to address was the "indiscriminate searches and seizures" conducted by the British "under the authority of 'general warrants.'" *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013) (citations omitted). To ensure law enforcement officers do not have "unbridled discretion to rummage at will among a person's private effects," *id.*, a warrant must "limit[ ] the authorization to search to the specific areas and things for which there is probable cause to search," *United States v. McMillian*, 786 F.3d 630, 639 (7th Cir. 2015). That particularity requirement under the Fourth Amendment "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *McMillian*, 786 F.3d at 639 (internal quotation marks omitted).

Courts have cautioned that the Fourth Amendment's particularity requirement "assumes even greater importance" in the context of digital information. *Galpin*, 729 F.3d at 446. "[A]dvances in technology and the centrality of computers in the lives of average people," after all, "have rendered the computer hard drive akin to a residence in terms of the scope and quantity of private information it may contain." *Id.* "This threat is further elevated in a search of Facebook data because, perhaps more than any location – including a residence, a computer hard drive, or a car – Facebook provides a single window through which almost every detail of a person's life is visible." *United States v.*

4

*Shipp*, 392 F. Supp. 3d 300, 308 (E.D.N.Y. 2019), *aff'd*, No. 21-1284-CR, 2022 WL 16543193 (2d Cir. Oct. 31, 2022). And that is by design: Facebook gathers information about a person's "personal, familial, social, professional, and financial activity," including not just information that users affirmatively share on the service, but also data that the company "proactively collects and aggregates" about its users. *Id.* The "potential for privacy violations occasioned by an unbridled, exploratory search" of such digital materials is, therefore, "enormous." *Galpin*, 720 F.3d at 447.

Indeed, the vast nature of the information Facebook maintains about an individual is reflected in the extensive material the search warrant sought here. In the items to be seized, for example, the warrant affidavit listed, among other things: "all activity logs for the account and all other documents showing the user's posts and other Facebook activities"; all stories posted by Ms. Allen; all photos and videos uploaded by *other* users that tagged Ms. Allen; friend's lists and rejected friend requests; comments, gifts, pokes, tags, and information about Ms. Allen's access and use of Facebook applications; all of the *contents* of communications and messages made and received by Ms. Allen, including "all Messenger activity, private messages, chat history, video and voice calling history"; all physical location data for the account; all information Ms. Allen's page was a "fan" of; records of all of Ms. Allen's Facebook searches; all information about Ms. Allen's "access and use of Facebook Marketplace"; any services used by Ms. Allen; the means and source of payment for such services, including "any credit card or bank account number"; all privacy settings, including records showing what Facebook users Ms. Allen had blocked; and all communications between Facebook and any *other* person regarding Ms. Allen or

5

her account. *See* Ex. K at pp. 1-4. In short, the warrant sought access to *extensive* information about Ms. Allen.

Notably, although the alleged arson took place on a single, discrete, day – October 10, 2021 – the warrant sought all of the above materials dating back to June 1, 2019, or nearly *two and half years* before the alleged offense. In fact, the June 2019 date also predates when Ms. Allen opened her soul food restaurant in February 2021. The warrant affidavit made no effort to justify such a broad timeline, giving no reason why probable cause existed to search and seize all of Ms. Allen's communications and chat history, friend data, activity logs, privacy settings, and location data, among several other forms of data, from more than two years before she even opened the restaurant at the heart of this case. The affidavit, therefore, failed to "carefully tailor" the search to its justifications, rendering the warrant overbroad. *See United States v. Blake*, 868 F.3d 960, 973-74 (11th Cir. 2017) (cautioning that in order to dispel any concern that Facebook warrants are "the internet-era version of a 'general warrant,'" the government "should have requested data only from the period of time during which [the defendant] was suspected of taking part" in the charged offense); *see also Shipp*, 392 F. Supp. 3d at 311 (finding Facebook warrant was overbroad where the warrant "could have been more clearly defined by its object – i.e., evidence of possession of a firearm in 2018," but wasn't).

The extended timeline, however, isn't the warrant's only problem here. Instead, the warrant was also overly broad in the scope of content it sought. The warrant affidavit provided no direct connection between the offense being investigated – the alleged arson on October 10, 2021 – and Facebook. The affidavit does not state, for example, that the

6

perpetrator in any way used Facebook as part of the offense, or provide a specific basis to believe much of the Facebook data would contain evidence of the offense. Instead, the warrant affidavit simply sought several "categories of information associated with the Facebook account, a seemingly boilerplate list apparently designed to capture all information associated with the account." *Shipp*, 392 F. Supp. 3d at 310. That same boilerplate approach has been rejected by courts as overly broad because it targets data "entirely unrelated to the facts in the [a]ffidavit and the crime charged." *Id.* Like the warrant in *Shipp*, for example, the warrant here also sought information about Ms. Allen's activities on Facebook Marketplace, "a service that can be used to buy and sell items and services online," without providing any reason to think Ms. Allen ever used that service, "let alone that Facebook Marketplace would contain evidence of the charged crime." *Id.* And that is just one example of the broad information sought in the warrant affidavit with no connection to the offense.

The affidavit also sought Ms. Allen's private communications and chat logs – not just on the days surrounding the fire or with a select group of people (like suspected co-actors – there were none), but *all* of her online communications through Facebook for well over two years. That was undeniably overbroad, particularly because there was no evidence that Ms. Allen used Facebook in connection with the alleged offense or communicated with anyone – let alone specifically communicated over Facebook – regarding the offense. *See United States v. Santos*, No. 23-CR-436 (OEM), 2024 WL 3566983, at * 10 (E.D.N.Y. July 29, 2024) (finding no probable cause to search robbery suspect's phone because there were "no particularized facts that would allow even a 'reasonable

7

inference' that [the defendant] used a phone in connection with . . . the two robberies or that [he] used a phone to conspire or communicate with another person to do so"); *see also United States v. Bertini*, No. 23-cr-61, 2023 WL 8258334, at *9 (S.D.N.Y. Nov. 29, 2023) (finding no probable cause where the warrant affidavit "allege[d] no facts that [the defendant] ever (1) used his cell phone in connection with committing or facilitating a bank burglary; (2) used his cell phone to communicate with anyone about committing a bank burglary; (3) carried his cell phone while committing the bank burglary; or (4) had reason to use or carry his cell phone in connection with committing or facilitating he bank burglaries at issue").

## CONCLUSION

The Facebook warrant here authorized a search that far exceeded the bounds of probable cause, both in terms of timeframe and scope, and it failed to "carefully tailor" that search to its justifications. Because the warrant was overbroad and lacked the particularity required by the constitution, all evidence obtained as a result of it must be suppressed. The affidavit also failed to supply probable cause that the fire was intentionally set or that Ms. Allen was responsible, and intentionally or recklessly omitted material facts necessary to probable cause, for the same reasons set forth in Ms. Allen's Motion to Suppress and Request for *Franks* Hearing. Accordingly, Ms. Allen respectfully requests that this Court grant her motion to suppress the fruits of the unlawful Facebook search.

Dated at Milwaukee, Wisconsin, this 27th day of May, 2025.

Respectfully submitted,

*/s/ Craig W. Albee*
Craig W. Albee, WI Bar #1015752
Dennise Moreno, NY Bar #5797154
Federal Defender Services
   of Wisconsin, Inc.
411 E. Wisconsin Avenue, Suite 2310
Milwaukee, WI 53202
Tel. (414) 221-9900
Email: craig_albee@fd.org

*Counsel for Defendant,* Arletta Allen