UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

     v.                                Case No. 24-CR-236 (PP)

ARLETTA ALLEN,

        Defendant.

## UNITED STATES' RESPONSE BRIEF TO DEFENDANT'S OBJECTION TO THE RECOMMENDATION AND ORDER

The United States of America, by and through its attorneys, Richard G. Frohling, Acting United States Attorney for the Eastern District of Wisconsin, and Kelly B. Watzka and Porchia S. Lewand, Assistant United States Attorneys, hereby responds to the defendant's objection to Magistrate Judge William E. Duffin's report and order and respectfully requests that the objection be overruled and the motions denied.

## I.     RELEVANT PROCEDURAL HISTORY

On May 27, 2025, Allen filed a motion to suppress all evidence from her residence, vehicle, and restaurant (Dkt. No. 23); a motion to suppress her Facebook records (Dkt. No. 24); and a motion to suppress her statements (Dkt. No. 25). Further, Allen requested an evidentiary hearing pursuant to *Franks v. Delaware,* 438 U.S. 154 (1978). After responses by the government, and replies by Allen, Magistrate Judge Duffin issued a recommendation to deny all three motions and denied Allen's request for a *Franks* hearing on August 4, 2025. (Dkt. No. 41).

1

On September 3, 2025, Allen filed an objection to Judge Duffin's recommendation. (Dkt. No. 44) Because Judge Duffin's recommendation and order were soundly supported by applicable law and facts in the record, Allen's objection should be overruled.

## II.     STATEMENT OF FACTS

At approximately 8:59 p.m. on October 10, 2021, emergency services/911 in Fond du Lac, Wisconsin, received a report of a burning smell and the sight of smoke in the 400 block of S. Main Street. SW Aff ¶ 7.[1]  Firefighters responding to the area determined that the smoke was emanating from the roof of "A Family Affair Soul Food Kitchen" (hereinafter "the restaurant") at 417 S. Main Street. *Id.* All of the doors and windows of the restaurant were closed and locked. *Id*.  After forcing entry, firefighters observed heavy smoke inside, which completely obscured their vision.  *Id*.  A thermal imaging camera led the firefighters towards the ceiling area of the kitchen. *Id*. Once in that area, they saw flames near the floor of the adjacent landing for the stairs that lead to the basement. *Id*.  Firefighters extinguished the fire by spraying their hoses in those areas. *Id*.

At the time of the fire, the building was owned by R.F. and leased by Allen, who owned and operated the restaurant on the premises. SW Aff ¶ 9.

Federal law enforcement agents from the Wisconsin Department of Justice, Division of Criminal Investigations (DCI) and the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) became involved in the investigation. *Id.* at ¶ 8.

ATF Special Agent Rick Hankins (hereinafter SA Hankins) conducted fire scene examinations on both October 12, 2021, and October 14, 2021. *Id.* at ¶ 10. After examining the fire scene and conducting various investigative measures, SA Hankins applied for several search

---

[1] The affidavit supporting the search warrants for Allen's home, business, and vehicle will be referenced as "SW Aff;" the affidavit supporting the search warrant for Allen's FB will be referenced as "FB SW Aff."

warrants pertaining to the investigation of the restaurant fire. The search warrants were authorized by Magistrate Judge Stephen C. Dries and subsequently executed. DCI Special Agents Kevin Heimrl and Matthew Anderson (hereinafter SAs Heimrl and Anderson) interviewed Allen in a vehicle outside her home during the search. (*See* audio recording at Dkt. No. 31)

The United States hereby relies on the facts contained within the four corners of SA Hankins' affidavits, as well as the parties' stipulated facts and attachments filed at Dkt. No. 30, including the audio-recorded interview at Dkt. 31, all of which are discussed in greater detail in the United States' original brief in opposition at Dkt. 32 and below.

## III.    LEGAL ANALYSIS AND ARGUMENT

A district judge must review *de novo* the portions of a magistrate judge's recommendation to which a party timely objects. (28 U.S.C. §636(b)(1); Fed. R. Crim. R. 59(b)(2). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." (28 U.S.C. §636(b)(1)). The court reviews a magistrate judge's denial of a defendants' motion for a *Franks* hearing for clear error. Fed. R. Crim. P. 59(a), *United States v. Harris*, 464 F.3d 733, 737 (7th Cir. 2006). "The clear error standard means that the court can overturn the magistrate judge's ruling only if it is 'left with the definite and firm conviction that a mistake has been made.'" *United States v. Balsiger*, No. 07-CR-57, 2010 WL 3239327, at *2 (E.D. Wis. Aug. 16, 2010) (quoting *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997)).

Because Allen's objections largely reiterate the arguments made in her underlying motions, the United States hereby incorporates and maintains the arguments articulated in its original consolidated response brief filed at Dkt. 32.

3

## A. THE AFFIDAVITS FOR ALLEN'S HOME, VEHICLE, AND RESTAURANT WERE SUPPORTED BY PROBABLE CAUSE.

As Magistrate Judge Duffin correctly recognized, Magistrate Judge Dries's finding of probable cause is entitled to significant deference on review and must be upheld if he "had a substantial basis to conclude that the search was reasonably likely to uncover evidence of wrongdoing." Dkt. 40 at 5, *see also United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010). The Seventh Circuit has held that even "doubtful cases" should be "resolved in favor of upholding the warrant." *United States v. Quintanilla*, 218 F.3d 674, 677 (7th Cir. 2000).

In her objections, Allen asserts that the affidavits supporting the warrants here failed to establish probable cause the fire was the result of arson, and that Allen was the person who probably set the fire. For the reasons set forth in the United States's original consolidated response brief (Dkt. 32) and those addressed below, Allen's claims lack merit.

Allen accuses the government and Judge Duffin of not adhering to the principles outlined in *Illinois v. Gates,* 462 U.S. 213 (1983). Her argument mischaracterizes the holding in *Gates*, in which the Supreme Court adopted a "totality of the circumstances" approach that emphasizes the practical, nontechnical nature of the probable cause determination. "Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision." *Gates* at 235. While *Gates* cautioned against magistrates relying upon wholly conclusory statements, *Gates* at 239, it did so in the context of addressing whether an affidavit that relied upon an anonymous letter about criminal activity supported a finding of probable cause.

Here, the totality of the circumstances goes well beyond the mere "because I said so" as Allen alleges. (Dkt. No. 44, at pg. 3). The four corners of SA Hankins' affidavit articulate the training, expertise, and observations of an experienced fire investigator, outlines portions of the

investigation conducted by other law enforcement and fire scene professionals, includes photographs and other information which detail and corroborate aspects of the investigation, and presents reasonable inferences supporting SA Hankins' assertions. Allen's claim that there is no foundation upon which Magistrate Judge Dries could accept SA Hankins' conclusions is inaccurate. Allen's unsubstantiated disagreement with the significance of some of the factors included within the affidavit does not render SA Hankins' statements merely conclusory. And as Magistrate Judge Duffin commented, "Although the affidavit's explanation is insufficient to train the issuing magistrate judge as a fire scene investigator, it is adequately detailed to substantiate the investigators' conclusions about the likely location of the fire's origin for probable cause standards." Dkt. 40 at 7.

Allen's objection also relies upon irrelevant sources. She cites an article in a law journal to argue that some arson investigations have led to wrongful convictions. (*Id.* at 5) First, the argument is improperly considered, and the article has no legally binding or persuasive authority before this Court. More importantly, the article attacks "*lay* 'arson investigators,' police officers, or similar first responders untrained in chemistry and physics."[2] (emphasis added) As articulated in the affidavit, SA Hankins' qualifications certainly surpass those under attack in the article, including but not limited to his nearly two decades as a special agent with ATF, and more than a decade as a certified fire investigator, having conducted over 285 fire scene examinations. (*See* SW AFF at ¶ 1-3)

Allen also invites this court to speculate about whether "the presence of a fire in a particular area could be the result of the fire spreading by 'drop down' or conduction." (*Id.* at 6). That sort of speculation is inappropriate and insufficient to invalidate what the reviewing court

---

[2] See the full article at
https://www.repository.law.indiana.edu/cgi/viewcontent.cgi?article=4101&context=facpub

read and inferred from the four corners of the affidavit in finding probable cause. And, as Judge Duffin pointed out, Allen presented no evidence to support her suggestion that an alternative location of origin elsewhere in the building was somehow missed. Dkt. 40 at 7. Again, Judge Duffin appropriately recognized that probable cause doesn't require the type of certainty that Allen demands, but instead is "based on probabilities" and "does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." Dkt. 40 at 6.

Adhering to that standard, Judge Duffin reasoned that the affidavit was "adequately detailed to substantiate the investigator's conclusion about the likely location of the fire's origin for probable cause purposes." (Dkt. No. at 7). Specifically, he relied upon the affidavit's statements regarding where the flames were observed, and the distinction between those flames and the heat signatures observed on the ceiling. (*Id*.) Further, Judge Duffin appropriately considered the fact that the investigation was still ongoing at the time the affidavits were submitted, noting that "[d]espite the ongoing nature of the investigation, the issuing magistrate judge had a substantial basis to find probable cause that someone started the fire intentionally." (*Id*. at 8)

Allen's challenge to her identification similarly fails. Magistrate Judge Duffin appropriately recognized that the probable cause standard does not require the affiant to directly connect Allen to the fire. (*Id*. at 9; *citing United States v. Sewell*, 780 F.3d 839 (7th Cir. 2015). Instead, Judge Duffin reasoned that the affidavit contained sufficient evidence of Allen's motive, including her application for economic hardship regarding her student loans, a failed utility payment by her bank, and the fact that she had invested approximately $100,000 into the business to infer that there was probable cause that the fire could have been financially

motivated. (*See Id*. at 9-10) The affidavit also included sufficient evidence of Allen's opportunity to start the fire, including photographs of a person approaching and departing the immediate area of the restaurant in the dark and while wearing a hood just minutes before the fire was reported and photographs from Allen's public Facebook posts demonstrating that her shape, size, and clothing was consistent with that person. *Id.* The affidavit also indicated that the person on the surveillance video appeared to arrive in a dark-colored SUV with chrome wheels, which the person parked approximately one block away from the restaurant, and the vehicle was consistent in appearance with the vehicle driven by Allen. *Id.* Judge Duffin also noted that the person in the surveillance footage appeared to trigger the restaurant's security light, and that Allen was one of three individuals with access to the door code to the restaurant, which was locked and had no signs of forced entry when firefighters arrived. *Id.*

At bottom, Magistrate Judge Duffin appropriately afforded deference to Magistrate Judge Dries's probable cause determination – but his recommendation also addressed why the totality of the circumstances set forth in the affidavits established probable cause to believe that this was an arson, and that Allen was the person responsible for setting the fire. For these reasons, and those set forth in the United States' original consolidated brief, the motions to suppress evidence obtained from Allen's restaurant, home, and vehicle should be denied.

## B. THE MAGISTRATE JUDGE DID NOT CLEARLY ERR IN DENYING ALLEN'S REQUEST FOR A *FRANKS* HEARING.

Allen's objections reiterate her accusation that SA Hankins intentionally omitted material facts and demand that a *Franks* hearing is warranted. For the reasons set forth in the United States's original consolidated response brief (Dkt. 32) and those set forth below, Judge Duffin did not clearly err in denying the request for a *Franks* hearing.

Allen relies heavily on unsupported and unpersuasive claims regarding the batteries found near the area of origin for the fire that were determined months later to be lithium-ion batteries. Judge Duffin rejected Allen's claims, reasoning that "considering the other suspicious circumstances addressed in the affidavit, specific mention of the batteries and their potential contribution to the fire would not have tipped the scales against probable cause." *Id.* at 14. His conclusion - that the absence of more detail about the batteries was not material to the probable cause finding – was not clearly erroneous.

As Judge Duffin correctly noted, Allen's burden for a *Franks* hearing also requires her to establish that SA Hankins intentionally or recklessly failed to include material facts because he entertained serious doubts as to the veracity of his affidavit. Because she cannot point to any evidence of such a subjective intent or concern on his part, she improperly accuses SA Hankins of failing to conform to guidelines in the NFPA 921. Even more inappropriately, Allen equates that purported failure with the failure to alert a warrant-issuing judge to the credibility concerns of an informant, i.e. the *Clark* factors. (See Dkt. No. 44, at pg. 20). The analogy is preposterous and certainly does not meet her burden under *Franks.*

Nothing in the record establishes a subjective intent on the part of SA Hankins to deceive the court and Allen's argument that he should have known better neither meets the level of intentional or reckless conduct required by *Franks* nor is factually accurate. In fact, prior to 2021, the NFPA 921 contained no section on lithium-ion batteries. It is improper to infer mal intent using a 2025 lens on an issue that was only emerging as an area of fire study in 2021 when the affidavit was sworn. The 2021 edition of the NFPA 921 annotates that this was a newly included section to the guide and instructs that "[l]ithium ion batteries are commonly used in portable appliances, toys, portable electronics, and standby power applications…[a]ll lithium ion

batteries can overheat and ignite if overcharged, undercharged, exposed to excessive heat or cold, short circuited, or physically damaged."[3] Additionally, unlike the stock photos in Allen's brief which depict intact and clearly labeled batteries, the photo below depicts the remnants of the fire damaged batteries that were actually recovered at the preliminary stage of the investigation in this case.



The condition of the recovered batteries necessitated forensic examination at the ATF Fire Research Laboratory, where months later they were identified as lithium-ion batteries. Nothing in the record indicates that at the time the affidavit was submitted SA Hankins knew the type of these fire damaged batteries or had any reason to believe that they had been subjected to any of the above-referenced circumstances. In fact, at the time of the fire, there was no evidence that any of the items on that shelf were energized. *See* SW Aff. at ¶ 11.  Simply put, Judge Duffin correctly determined that in light of the other suspicious circumstances addressed in the affidavit, additional information about the batteries would not have materially changed the probable cause determination. That determination was not clearly erroneous.  But, even if the

---

[3] NFPA 921 2021 edition, 921-147, section 9.13.

court were to conclude that SA Hankins was remiss in not addressing the potential relevance of the batteries, negligence is insufficient to substantiate a *Franks* challenge.

Allen also claims that Judge Duffin "simply demands too little from the government" regarding the fact that the affidavit makes no mention of the absence of ignitable liquid at the fire scene. However, the presence or absence of ignitable liquids had no bearing on probable cause because use of an accelerant is not the only way to intentionally set a fire and, more importantly, the affidavit articulated that the fire was believed to be "consistent with intentional open flame ignition of combustible material." SW Aff ¶ 43. The lack of an accelerant did not alter the probability that an open flame was introduced to combustible material at the location where fire was observed by first responders, especially given SA Hankins' statement about the timing of the fire in relation to the suspicious person departing the vicinity of the restaurant, and the presence of charred towels, cardboard, and napkins, as well as multiple lighters at the suspected origin point. *Id.* at ¶ 12-13. Moreover, Allen has not pointed to any reliable source that establishes the absence of an ignitable liquid at a fire scene is, by itself, an indicator of an accidental fire. For these reasons, Judge Duffin appropriately concluded that the failure to address the lack of an accelerant in the affidavit did not defeat probable cause. (*See* Dkt. No. 41 at pg. 12). That conclusion was not clearly erroneous given the totality of the circumstances.

Finally, Allen inaccurately claims that SA Hankins relied upon negative corpus in concluding that there was probable cause to believe that the fire was intentionally set and asserts that he should have acknowledged in his affidavit that his methodology was inappropriate pursuant to the NFPA 921.[4] Allen's argument that Judge Duffin "doesn't deny that Hankins . . .

---

[4] The NFPA 921 is not a mandate, but rather suggested guidelines for fire/explosive investigations. While it is widely accepted, the NFPA 921 itself cautions "anyone using this document should rely on his or her own judgement…in determining the exercise of reasonable care in any given circumstance. The NFPA has no power, nor does it undertake, to police or

used [negative corpus]" is a stretch, at best. Dkt. 44 at 20.  In fact, SA Hankins pointed to several data points upon which he relied in his affidavit, including the presence of a suspicious person in the immediate vicinity of the building just before and after the fire, the duration of time between that person's departure and when the smoke was observed by the 911 caller, and the fact that the building was locked and had no signs of forced entry when first responders arrived.  *See* SW Aff. at 10-17. SA Hankins' affidavit further noted that the person's appearance was consistent with Allen's shape and size, was wearing clothing and shoes consistent with items previously worn by Allen and drove a vehicle consistent with Allen's vehicle. *Id*.  It explained that the vehicle was parked approximately a block away, instead of adjacent to the restaurant, and the person approached the closed restaurant with a hoodie drawn. *Id*. The affidavit also noted that the person appears to have triggered the motion detection light at the restaurant's rear entrance. *Id*. Given the similarities in appearance to Allen and her vehicle, Magistrate Dries could reasonably infer that Allen had lied to agents about being home at the time of fire.  SA Hankins' affidavit was thorough, detailed, and provided the reviewing court with information sufficient to support probable cause. Simply put, there was no need for SA Hankins to disclose reliance on negative corpus because that wasn't the methodology he used.

Further, while the NFPA 921 provides guidance to investigators on numerous factors related to fire investigation, it is not the measure by which courts assess probable cause, nor does it have any bearing on whether a defendant has satisfied her burden of establishing the necessity of a *Franks* hearing.  Notably, SA Hankins was very clear to inform Magistrate Judge Dries that a final origin and cause had yet to be determined and that other potential causes remained under investigation.  He never averred that the investigation was complete or that his findings were

---

enforce compliance with the contents of NFPA standards." NFPA 921, 2021 edition, inside over disclosure "Important Notices and Disclaimers Concerning NFPA Standards."

made with 100% certainty. That is evidence of SA Hankins' candor and professionalism, not deceit as Allen alleges. Taking into account the limitations of SA Hankins' findings, Magistrate Judge Dries nonetheless found probable cause. Under these circumstances, it was not clear error for Judge Duffin to conclude that because SA Hankins revealed the suspicious nature of the fire and informed the reviewing court that other potential causes were still being investigated, the omissions about which Allen complains were not material. (Dkt. No. 41 at pg. 15).

Whether taken in isolation or cumulatively as Allen's objections demand, the omissions she cites were not material to the probable cause finding and nothing in the record establishes a subjective intent on the part of SA Hankins to deceive the reviewing court. Because Allen failed to meet the standards required for a *Franks* hearing, Magistrate Judge Duffin did not clearly err in denying her request for a hearing.

## C. THE GOOD FAITH DOCTRINE APPLIES TO THE EXECUTION OF THE FACEBOOK SEARCH WARRANT

Judge Duffin appropriately recommended that Allen's motion to suppress evidence obtained pursuant to a search warrant of her Facebook account be denied. Although Judge Duffin determined that the warrant was impermissibly broad,[5] he nevertheless concluded that suppression was not warranted because the agent acted in good faith. (Dkt. 40 at 24). That conclusion is amply supported by the record and the relevant case law. Here, SA Hankins' actions are entitled to a presumption of good faith because he sought and obtained a warrant.

_____

[5] In addition to relying on the good faith doctrine, the United States previously argued that 1) the warrant was sufficiently limited in scope and breadth and 2) that the defendant lacked standing to assert a Fourth Amendment violation for the vast majority of records seized because her Facebook privacy settings either allowed members of the public or any of her hundreds of friends to access 74 of the 84 categories of information associated with her account (Dkt. 32 at 21-23, 27). The Magistrate Judge rejected the first argument and did not reach the merits of the second argument. The United States did not object to the Magistrate Judge's findings on these issues but, in light of this Court's *de novo* review, refers the Court to its original consolidated response brief to the extent it chooses to address those issues.

*United States v. Leon*, 468 U.S. 897, 922 (1984). As Judge Duffin noted, "in the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination or his judgment that the form of the warrant is technically sufficient." (Dkt. 40 at 24; *citing Leon* at 921.  In light of these circumstances, Allen can only prevail on her motion if she demonstrates that 1) the agent should have known that the search was illegal despite Magistrate Judge Dries's authorization (*Leon* at 922); and 2) the deterrence benefits of suppression outweigh its heavy costs (*Davis v. United States*, 564 U.S. 229, 236-237 (2011)).  Judge Duffin correctly concluded that Allen failed to satisfy either of those burdens.

"[P]olice officers are charged with a knowledge of well-established legal principles as well as an ability to apply the facts of a particular situation to these principles." *United States v. Bell*, 585 F.3d 1045, 1052 (7th Cir. 2009). To be well-established, case law from the Seventh Circuit must give an officer in this jurisdiction reasonable notice of a warrant's deficiency. *See United States v. Koerth*, 312 F.3d 862, 869 (7th Cir. 2002) (finding the good faith-exception applied because "[w]e have not 'clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand").  As the United States previously argued, whether a search warrant for an entire social media account satisfies the particularity requirement of the Fourth Amendment is an unsettled area of the law. *See United States v. Burkhow*, 2020 WL 589536, at *9 (N.D. Iowa Feb. 6, 2020) (discussing the wide variety of holdings in cases that consider the effect of limiting a Facebook search warrant to the relevant time range or offense being investigated).  Allen has not pointed to any binding Supreme Court or Seventh Circuit case that definitively resolves the issue in her favor, such that SA Hankins could be expected to know that the social media warrant at issue here was overly broad despite Magistrate Judge Dries's authorization.  Allen previously

13

relied upon two non-precedential cases, neither of which decided the particularity issue, contrary to Allen's representation. Dkt. No. 24 at 6. For this reason, Judge Duffin correctly discounted Allen's reliance on the 11th Circuit's decision in *Blake* in assessing whether the good faith doctrine applied here. Dkt. 40 at 24; *see also United States v. Roberts*, 2023 WL 5509261 at *4 (S.D. Ind. Aug. 25, 2023) (finding *Blake* decision insufficient to put officers in the Seventh Circuit on notice that a social media warrant is overbroad). In her objection, Allen cites only one precedential Seventh Circuit case, but it does not further her cause.[6]

Following the directive of the Seventh Circuit, Judge Duffin noted that, because the law is unsettled on this issue, application of the exclusionary rule would only be appropriate if Allen demonstrated that the agent's conduct was deliberate, reckless, or grossly negligent. Dkt. 40 at 24, *citing United States v. Martin*, 807 F.3d 842, 847 (7th Cir. 2015). He correctly concluded that Allen had not pointed to any aggravating conduct on behalf of SA Hankins and thus could not satisfy her burden. The record here solidly supports that conclusion.

For these reasons and those set forth in the United States' original consolidated response brief (Dkt. 32), the Court should deny Allen's motion to suppress information obtained pursuant to the Facebook warrant.

## D. ALLEN WAS NOT IN CUSTODY AT THE TIME OF HER INTERVIEW

Judge Duffin's determination that *Miranda* warnings were not required because Allen was not in custody was legally sound. Judge Duffin recognized that Allen's movements were somewhat restricted *prior* to the interview to ensure safety and to preserve evidence, and that she

---

[6] *United States v. Mann*, 592 F.3d 779 (7th Cir 2010) did not involve an alleged overly broad social media warrant. Instead, *Mann* involved circumstances where an officer partially exceeded the scope of a warrant to search the defendant's computer and hard drive when he discovered evidence of an unrelated crime and continued to search for evidence of that crime, in addition to the crime originally specified in the warrant, rather than obtain a second warrant.

was undoubtedly disturbed by what was occurring, but ultimately concluded that the environment was not sufficiently police dominated to render her in custody.

In her objection to that finding, Allen's use of inflammatory language ("one-two punch;" "knockout punch") and characterization of the government's argument as "a fiction" (Dkt. 44 at 28-29) is simply not supported by the undisputed evidence – particularly the recording of the agents' interactions with Allen. The recording speaks for itself – Agents Heimrl and Anderson were polite, calm, professional, and sensitive to Allen's concerns and wellbeing at every stage of their encounter with her. Their demeanor did not change even when they made clear to Allen that they believed she had something to do with the fire. There is no question that a reasonable person in Allen's shoes would understand that she was free to leave, as she was explicitly told on multiple occasions that she was free to leave, that she did not have to talk to the agents, and that she was not under arrest and would not be arrested that day. (Tr., 7:02, 7:21, 9:11, 9:28, 9:32, 11:44, 12:20).[7] The additional circumstances surrounding the interview further demonstrate that a reasonable person would conclude she was free to leave, namely that the interview was 1) conducted with Allen's consent, 2) by two agents dressed in plainclothes who were familiar to Allen, 3) in an unmarked truck, 4) occurring on familiar turf – that is, the driveway of Allen's home, 5) within view of the public, 6) of relatively short duration, and 7) when Allen had not been patted down, handcuffed, or had weapons drawn on her. Once the search of her vehicle was complete, Allen was also twice told she could leave the premises in her vehicle, but she declined to do so. She was afforded the opportunity to privately use the agent's phone to call her

---

[7] Allen falsely asserts that she was "never once asked" if she wanted to talk until after she terminated the interview. Dkt. 44 at 32. In fact, she was asked twice. Soon after the agents arrived at Allen's house, they asked if they could speak with her outside in their truck and she agreed. Tr. 5:51-5;55. Once inside the truck, SA Heimrl told Allen, ". . . you don't have to talk with us. Okay? But I'm hoping that we can take this opportunity to talk some more. Okay?" Tr. At 11:44. Allen did not object to continuing the conversation at that point.

pastor, but she declined that offer as well. Perhaps most significantly, it was Allen – not SAs Heimrl and Anderson - who controlled the scope and duration of the interrogation. Contrary to Allen's suggestion that she was helpless, she made thoughtful choices throughout the encounter by, for example, correcting SA Heimrl on a point of fact, declining to agree with the agents' characterization of the evidence shown to her, stating she did not wish to offer an explanation because she did not wish to incriminate herself, and ultimately exercising her right to terminate questioning, which the agents immediately honored. Allen then spent what turned out to be the majority of her time in the agents' vehicle engaging in small talk and receiving some information about the timing/logistics of the search.

Given these facts, Judge Duffin correctly determined that the totality of the circumstances did not approximate the "inherently coercive" environment of a "station house" such that *Miranda* warnings were required. *See Howes v. Fields*, 565 U.S. 499, 509 (2012).

Nevertheless, Allen slights the Magistrate Judge for not addressing two cases on which she relied, *United States v. Slaight,* 620 F.3d 816 (7th Cir.2010) and *United States v. De La Vega,* 2018WL8545871 (E.D. Wis. Oct. 18, 2018). But, as the United States pointed out in its original consolidated response brief, neither of those cases is remotely comparable to this case. In *Slaight,* the defendant was interviewed in a tiny room at the police station after "nine officers drove up to the house, broke in with a battering arm, strode in with pistols and assault rifles at the ready, and when they found [the defendant] naked in his bed ordered him, in an 'authoritative tone' and guns pointed at him, to put his hands up." *Slaight* at 820.  Similarly, in *De La Vega*, the defendant was awoken by twelve agents executing a search warrant who yelled at him to "open the fucking door," entered the home with weapons drawn, pointed a rifle at him, told him to put his hands up, handcuffed him, began to execute the search, and refused to answer questions

about what was going on before later attempting to interview him in a nearby law enforcement vehicle. *De La Vega* 2018WL8545871 at *1. To claim that the actions of Agents Heimerl and Anderson were consistent with those at issue in *Slaight* and *De La Vega* is absurd.

Allen also continues to insist that SAs Heimrl and Anderson engaged in a ruse to trick her and circumvent *Miranda*. Not so. First, as the United States explained in its original brief, the word ruse was never used by either agent – it appeared in a report authored by another agent who had no involvement with Allen until well after her interview that morning. Regardless, while the agents reasonably did not disclose to Allen that they intended to execute a warrant for safety reasons, they were otherwise entirely truthful with Allen – that is, they told her they had some information about the investigation that they wanted to share with her and asked if they could come to her house to speak with her.

Second, this was clearly not a *Miranda* avoidance scheme like *Slaight*, in which officers went to the defendant's home intending to execute a search warrant and "could easily have obtained an arrest warrant as well." *Slaight* at 847. The officers testified in that case that they had intended to interview the defendant at his home and gave implausible reasons why that did not occur, while other evidence revealed that they had already reserved a "minute," windowless room at the police station in which to interview him. *Id.* at 818. The officers also testified that the defendant was free to leave but had denied his request for a smoke break and locked him in the room alone for 40 minutes. *Id.* at 819. Based on the record in that case, the court found that the officers "made ingenious, pertinacious, but ultimately (as it seems to us) transparent efforts to disguise a custodial interrogation as noncustodial." *Id.* at 817. Nothing in the record would support such a finding in this case, in which the agents were not in a position to arrest Allen,

never lied to her or gave false testimony to the court, and whose actions were entirely consistent with their statements to Allen.

For all these reasons and those set forth in the United States' consolidated response brief, the defendant's motion to suppress her statements should be denied.

## III.    CONCLUSION

In recommending that Allen's motions to suppress and request for a *Franks* hearing be denied, Magistrate Judge Duffin considered and rejected much of what Allen simply repeats in her objections.  His recommendation demonstrates appropriate deference to Magistrate Judge Dries's probable cause determination and is amply supported by application of the relevant case law to the largely undisputed facts and reasonable inferences drawn therefrom.  His order denying a *Franks* hearing was not clearly erroneous on this record.  This Court should adopt his recommendation, overrule Allen's objections, and deny her motions.

Dated at Milwaukee, Wisconsin, this 17th day of September 2025.

Respectfully Submitted,

RICHARD G. FROHLING
Acting United States Attorney

By:    /s/ *Kelly B. Watzka &*
       *Porchia S. Lewand*
       Assistant United States Attorneys
       Watzka Bar No. 1023186
       Lewand Bar No. 1099830
       Attorneys for Plaintiff
       Office of the United States Attorney
       Eastern District of Wisconsin
       517 East Wisconsin Avenue, Room 530
       Milwaukee, Wisconsin, 53202
       Telephone: (414) 297-1700
       Fax: (414) 297-1738
       E-mail: Kelly.watzka@usdoj.gov
       E-mail: porchia.lewand@usdoj.gov

18

19