UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No. 24-CR-236

ARLETTA ALLEN,

Defendant.

---

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTIONS *IN LIMINE***

---

The United States of America, by and through its attorneys, Kelly B. Watzka and Porchia S. Lewand, Assistant United States Attorneys, hereby responds to the defendant's motions *in limine*.

## I. Motion to exclude evidence of financial hardship that pre-dates her opening and operation of the restaurant

The defendant seeks to exclude evidence of any financial hardship preceding the opening and operation of her restaurant, namely evidence of her 2017 and 2018 bankruptcy petitions and Tables 2 and 3 and Figure 1, which are included in ATF Forensic Auditor Kristin Fanta's expert report. (*See* ECF 67-1, Report of Financial Analysis at 8-9). While the defendant concedes that evidence of financial hardship is relevant to motive,[1] she asserts that financial hardship preceding the opening of the restaurant is not relevant and unduly prejudicial. The United States does not object to exclusion of evidence related to the defendant's 2017 bankruptcy petition but,

---

[1] The United States has provided significant legal authority for this proposition in its motions *in limine*. *See* ECF 76, at 16-18.

for the following reasons, maintains that the 2018 bankruptcy petition, which resulted in a discharge of her debts, and Table 2 and 3 and Figure 1 are relevant and not unduly prejudicial.

To aid the Court in its consideration of this motion, the United States proffers that the defendant filed for bankruptcy under Chapter 7 on March 16, 2018. (ECF 67-1, Report of Financial Analysis at 7). Her bankruptcy pleadings included a self-reported statement of her assets and liabilities, information upon which ATF Forensic Auditor Kristin Fanta relied, in part, to establish the defendant's assets prior to the fire. *Id*. The defendant's debts were discharged on July 16, 2018 (*Id.*), making her ineligible to seek bankruptcy under Chapter 7 again until March 16, 2026, or under Chapter 13 until March 16, 2022. *See* 11 U.S.C. §§ 727(a)(8) and 1328(f)(1).

Ms. Fanta included data relating to the defendant's debt and financial obligations as of October 2018 in Tables 2 and 3 and Figure 1 of her report to show the progression of her debt and obligations between October 2018 and October 2021, when the fire occurred. Specifically, those tables and that figure illustrate that the defendant's total debts and financial obligations increased by approximately 89.6% from $69,168.18 to $131,209.36 during that time period (ECF 67-1, Report of Financial Analysis at 8-9). This information is part of the data upon which Ms. Fanta relied in concluding that that defendant experienced a substantial escalation of indebtedness and financial exposure preceding the fire, that she had insufficient liquid assets to satisfy her debts or meet required payments, that her financial situation was increasingly unstable, that the restaurant was not profitable, and that it was likely that the defendant would need additional personal resources or debt to support the restaurant's operations. (ECF 67-1, Report of Financial Analysis at 15).

The 2018 bankruptcy has substantial probative value because it bears directly on the defendant's motive. The evidence helps the jury understand a specific financial circumstance: the

defendant had previously obtained relief from debt through bankruptcy, incurred subsequent financial obligations associated with the restaurant, and was subject to legal limitations on obtaining the same form of bankruptcy relief again. That circumstance is relevant to why the restaurant and the insurance proceeds associated with its destruction could have been financially meaningful to the defendant. The United States is not asking the jury to infer that because the defendant previously filed for bankruptcy, she is the type of person who commits arson and insurance fraud. Rather, the evidence concerning the unavailability of another discharge bears on the financial alternatives available to her at a time when she was experiencing significant financial hardship and explains why a fire at the restaurant and anticipated insurance proceeds could provide an alternative means of relieving those financial pressures. The distinction is important, as the former is an impermissible propensity-based inference and the latter is an admissible motive-based inference.

The Seventh Circuit's decision in *United States v. Romandine*, 289 Fed.Appx. 120 (7th Cir. 2008) (nonprecedential), is instructive. In *Romandine,* the defendant was convicted of committing an arson at his restaurant. At trial, the government introduced evidence of the defendant's financial motive, including a bankruptcy petition that was discharged three years prior to the fire and which meant that another Chapter 7 petition would not have been available to him for years. *Id*. at 121-122. Over the defendant's objection, the government was also allowed to introduce evidence of his prior drug use for a purpose not subject to an exception under Rule 404(b) and that ruling formed the basis for his appeal. *Id*. at 121. On appeal, the court agreed that the drug use evidence should not have been admitted but ultimately found that the error was harmless, noting that "the significant amount of untainted evidence in this case is sufficient to compel the conclusion that a rational jury could find Romandine guilty beyond a

reasonable doubt, notwithstanding the erroneously admitted evidence." *Id*. at 129. Significantly, among the "untainted evidence" the court explicitly cited was the evidence related to Romandine's prior bankruptcy. *Id*. at 128. In particular, the court noted, "[Romandine's] debts were piling up and he had incurred over $3,000 in bank fees for bounced checks, but another bankruptcy filing was not an option." *Id*.

Although *Romandine* is nonprecedential, its factual similarity to this case is striking. It demonstrates that a defendant's prior bankruptcy and its resulting limitation on another bankruptcy filing are relevant and admissible as evidence of a defendant's financial motive to commit arson.

Evidence of the defendant's 2018 bankruptcy proceeding does not create unfair prejudice sufficient to overcome its probative value. Bankruptcy itself is not evidence of criminal conduct or bad character – and the United States does not intend to suggest otherwise. The jury can readily understand that individuals and businesses may lawfully seek bankruptcy protection and that doing so does not constitute wrongdoing. Indeed, the United States can minimize any potential of unfair prejudice by presenting only those facts necessary to establish the relevant financial circumstances – that is, the filing date of the bankruptcy, the discharge date, and the fact that the defendant was ineligible to seek further bankruptcy relief at the time of the fire and for years thereafter. The United States need not introduce additional details – such as the amount of her discharged debt - that have no bearing on motive. The Court may also instruct the jury that bankruptcy is a lawful process by which individuals may seek debt relief and that the defendant's prior bankruptcy may not be considered as evidence that the defendant has a particular character or propensity to commit crime. Because the evidence can be presented in a focused manner, and

the Court can provide a limiting instruction, there is little risk of the jury deciding the case based on an improper purpose.

For similar reasons, the United States should not be precluded from introducing the 2018 financial data included in Tables 2 and 3 and Figure 1 of Ms. Fanta's report. That data is part of Ms. Fanta's overall analysis of the defendant's financial circumstances and serves as part of the foundation for her opinions. Further, the United States does not seek to introduce the 2018 data to suggest that the defendant has a propensity for indebtedness. Rather, that data is relevant to show the substantial escalation of the defendant's total debts and financial obligations leading up to the fire. It, too, bears directly on the defendant's motive to commit the crimes with which she is charged. The progression of the defendant's financial circumstances between October 2018 and October 2021, when coupled with other events (for example, poor performance of the restaurant, the need to repair the roof, and notice that her commercial liability insurance policy was about to be cancelled), paints an overall picture of mounting financial pressure and dire instability. The totality of the defendant's financial circumstances, including the 2018 data, are relevant to her motive and any concern about unfair prejudice can be addressed with a limiting instruction.

Accordingly, the Court should deny the defendant's motion to exclude evidence of her 2018 bankruptcy and Tables 2 and 3 and Figure 1 of Ms. Fanta's report.

## II. Motion to exclude accusatory lay witness opinion testimony

The defendant requests that the Court prohibit the United States from questioning any lay witnesses about whether they personally believe she is guilty. The United States has no objection to this motion, provided that the defendant is prohibited from doing the same. That is, the defendant should also be prohibited from questioning witnesses about whether they personally

believe she is not guilty – or whether they believe any other person is responsible for the fire.

### III. Motion to exclude attorney demand letter

To aid the Court in evaluating this motion, the United States proffers that R.F., the owner of the building that housed the defendant's restaurant, was an assignee under the defendant's commercial liability insurance policy who was entitled to proceeds for loss of the building due to the fire.[2] The defendant's insurance provider issued a check on November 12, 2021, in the amount of $160,000 for the loss of the building.[3] The check was sent to the defendant, as the policy holder, and was paid to the order of "A Family Affair Soul Food" and R.F. The defendant told R.F. that she received the check on November 29, 2021, but insisted upon reaching an agreement with R.F. about how much of the $160,000 she would receive from him. The two engaged in a lengthy text exchange over the course of days during which the defendant firmly insisted she should receive some of the proceeds due to improvements she made to the property and refused to endorse or produce the check. R.F. maintained that that she was not entitled to proceeds for loss of the building, that she paid significantly less rent under the terms of her triple net lease in exchange for assuming responsibility for any maintenance/improvements, that she was behind on her rent, and that the $160,000 check would not fully compensate him for the aggregate loss of the building. Ultimately, R.F. engaged legal counsel who sent a demand letter to the defendant indicating an intent to sue her if she did not turn over the check to R.F. In response, the defendant endorsed the check and produced it to R.F. for his signature at Horicon Bank. The check was immediately deposited into R.F.'s account at Horicon Bank on December 10, 2021.

---

[2] Pursuant to the defendant's triple net lease, she was required to maintain commercial liability insurance for the property, among other things.

[3] Separate checks were issued for loss of business income and damage to the contents of the building, among other things, stemming from the fire.

For the reasons set forth in the defendant's motion, the United States will not seek to introduce the attorney's demand letter in its case in chief. That letter contains representations regarding the legality of the defendant's conduct in withholding the check that are not relevant to the jury's determination. However, the United States maintains – as it indicated in its motions *in limine* (*see* ECF 76, at 16-18) - that evidence of the defendant's belief, whether right or wrong, that she would be entitled to significant insurance proceeds, and her initial withholding of the $160,000 check until R.F. agreed to give her a portion of that check, are relevant to her motive and admissible to explain why she may have viewed arson as a solution to her financial problems. For this reason, the United States intends to call R.F. as a witness and solicit testimony regarding his post-fire communications with the defendant about the check and the steps he took to acquire it, including obtaining legal representation who sent a letter to the defendant which finally prompted her to turn over the check. These facts are certainly probative of the defendant's beliefs, even if mistaken, about what she would receive as a result of the fire.

For these reasons, the Court should grant the defendant's motion in part – by excluding introduction of the demand letter but allowing R.F. to testify that the defendant demanded to receive a portion of the $160,000 check and refused to turn it over to him until after he hired an attorney who sent a letter promising litigation if she did not do so.

Respectfully submitted at Milwaukee, Wisconsin, this 1st day of October 2026.

By: /s/ *Kelly B. Watzka &*
*Porchia S. Lewand*
Assistant United States Attorneys
Watzka Bar No. 1023186
Lewand Bar No. 1099830
Attorneys for Plaintiff
Office of the United States Attorney
Eastern District of Wisconsin
517 East Wisconsin Avenue, Room 530

Milwaukee, Wisconsin, 53202
Telephone: (414) 297-1700
E-mail: kelly.watzka@usdoj.gov
E-mail: porchia.lewand@usdoj.gov